JOHN A. BUCK *vs.* MERCHANTS' MUTUAL MARINE INSURANCE COMPANY.

Hancock. Decided December 3, 1878.

*Corporation.*

The charter of the company provides that all the corporate powers shall be exercised by the trustees. Special act of 1869, c. 17, provides "when the business of said corporation shall be closed up," etc., "its remaining assets shall be divided among the holders of (said) consolidated scrip in proportion to the amount held by each." The members of the company voted "to recommend to the trustees that $117,400 be divided among the holders of consolidated scrip," and that the "president is instructed to pay the proportion (which amounts to 200 per cent) upon the presentation of the certificates." The president paid as so instructed on all the certificates (including his own and those of seventy-six others), except only on one scrip of $200 held by the plaintiff, which he refused to pay on account of certain alleged equities, and a supposed legal justification, that the trustees had never voted to pay the final dividends. *Held,* that the evidence was sufficient to authorize the inference that the corporation was winding up its affairs and dividing its assets, as provided in the act of 1869; that the dividend was properly made, and that the plaintiff was entitled to maintain an action for his share thereof.

ON EXCEPTIONS.

ASSUMPSIT for money had and received, for the sum to which the plaintiff is entitled by virtue of a certain scrip or certificate of indebtedness, with dividend and interest to date of writ, October 7, 1875, entitled "the consolidated scrip of the Merchants' Mutual Marine Insurance Company," numbered 297, dated Bangor, July 19, 1872, signed J. B. Foster, president, and of the following tenor: "This certifies that John A. Buck is entitled to two hundred dollars in the consolidated scrip of the Merchants' Mutual Marine Insurance Company, and to receive interest on two hundred dollars, payable semi-annually, on the first Monday of January and July of each year.

"This certificate is issued in conformity with the provisions of the charter, and is subject to all its conditions and restrictions, and is transferable only on the books of the company by——— or ——— attorney. ——— secretary."

After the evidence was out, the substance of which appears in the opinion, the presiding justice, on defendants' motion, ordered a non-suit; and the plaintiff alleged exceptions.

*L. Barker, T. W. Vose & L. A. Barker,* for the plaintiff.

*C. P. Stetson,* for the defendants.

LIBBEY, J. Laws of 1869, c. 17, amending defendants' charter, among other things, provides that consolidated scrip may be issued in exchange for the scrip authorized and issued under the original charter; and made subject to the provisions and lien of the original charter; and it further provides that " when the business of said corporation shall be closed up and all its other liabilities discharged, as the final act of its existence, its remaining assets shall be divided among the holders of said consolidated scrip in proportion to the amount held by each." This consolidated scrip was irredeemable during the life of the corporation, but entitled the holder to semi-annual interest and to annual dividends, the same as are declared to policy holders; and the holders of it were members of the corporation.

By the charter, the corporate powers of the defendant company shall be exercised by a board of trustees. But the board of trustees can only exercise its corporate powers. It cannot surrender them, wind up the affairs of the corporation and divide its assets. That can be done by a vote of the members of the corporation only.

At the annual meeting of the members of the coporation, held January 15, 1872, the report of a committee of the trustees to examine the condition of the company was read, and thereupon it was " voted to recommend to the trustees that the sum of $177,400 be divided among the holders of consolidated scrip in proportion to the amount of scrip held by each; and the president is instructed to pay the proportion (which amounts to 200 per cent, or $200 for each $100) upon the presentation of the certificates, which shall be indorsed upon the certificates, and shall also embrace the agreement that no further interest shall be claimed under said certificates; and the holders of such certificates shall sign a receipt corresponding on the books of the com-

pany which shall embrace an agreement that, in case any claim shall arise against this company for which we are liable, which the assets of the company are not sufficient to meet, they will pay their proportion of such deficiency."

A form of the receipt and agreement to be indorsed upon the certificates, and also one to be signed on the books of the company, were prescribed by a vote of the meeting.

A committee was appointed to award to the secretary a fair compensation for services rendered and required in winding up the affairs of the company.

The defendants produced their dividend book, which was put in evidence by the plaintiff. It is headed by the form of receipt and agreement prescribed by the vote of the company, which is followed by the names of each scrip holder, the amount of his scrip and the dividend to which he was entitled; among them is the name of the plaintiff, his three pieces of scrip and the dividend on each.. Each scrip holder had receipted on the book for his dividend, except the plaintiff for the one he seeks to recover in this suit.

The receipt recites that the dividend is " made by a vote of the trustees of said company, under date of January 15, 1872."

Here we have a vote of the members of the corporation dividing its assets; the dividend book, showing that. the dividends were made in accordance with that vote; the receipt prescribed, reciting that .the dividend was made by vote of the trustees, signed by all the members of the corporation except the plaintiff, showing that their dividends had been paid to them. This evidence is sufficient to authorize the inference that the corporation was winding up its affairs, and dividing its assets among the holders of its consolidated scrip, as provided in the act of 1869, and not making a dividend of its annual earnings merely. It is sufficient to show that the dividend was properly made; and the plaintiff, having demanded his dividend and payment having been refused, is entitled to maintain this action for it.

*Exceptions sustained.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.